```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS


MARGARET GOMEZ,                   )
                                  )
               Plaintiff,         )
                                  )
vs.                               )    Case No. 08-1227-WEB
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of                   )
Social Security,                  )
                                  )
               Defendant.         )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On January 18, 2008, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 14-26).  Plaintiff alleges that she has been disabled since January 1, 2006 (R. at 14). Plaintiff is insured for disability insurance benefits through March 31, 2009 (R. at 16).  At step one, the ALJ determined that

plaintiff has not performed substantial gainful activity since January 1, 2006, her alleged onset date (R. at 16).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative changes of the lumbar spine with mild scoliosis, major depression, a panic disorder with agoraphobia, history of headaches, and chronic obstructive lung disease (R. at 16).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 18).  After determining plaintiff's RFC (R. at 20), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 24).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 25).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 26).

**III. Are the RFC findings of the ALJ supported by substantial evidence?**

The ALJ made the following RFC findings:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, or work which requires lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently, sitting about 6 hours of an 8-hour day, and standing or walking about 4 hours of an 8-hour day. The claimant cannot stand and/or walk longer than 30 minutes at a time without having to stop and rest for 30 minutes. Pushing and pulling limitations are the same as those for lifting and carrying. The claimant has nonexertional limitations

> precluding more than occasional climbing,
> balancing, stooping, kneeling, crouching, and
> crawling. She must avoid concentrated
> exposure to extreme cold. The claimant is
> capable of engaging in gainful employment,
> but would do best in a setting that is stable
> in terms of its environment, its location,
> and its function. She is restricted to
> working with tasks that are essentially at a
> simple instruction level and are routine and
> repetitive, and where she would have limited
> contact with the general public as well as
> with coworkers and where she would be able to
> have essentially stable contact with just a
> few other individuals.

(R. at 20).

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the

court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ considered and made RFC findings largely consistent with the state agency physical and mental RFC assessments (R. at 23, 24, 355-363, 382-386). The ALJ also gave substantial weight to the opinions of Dr. Schwartz, who performed a consultative mental examination on the plaintiff (R. at 23, 24, 352-354). However, the ALJ added additional limitations based upon

plaintiff's credible testimony that she was unable to stand and/or walk longer than 30 minutes at a time (R. at 23-24). As noted by the ALJ, no treating medical source stated plaintiff cannot work or recommended specific limitations not contained in the ALJ's RFC findings (R. at 23). The ALJ has clearly linked his RFC determination to specific evidence in the record.

At the hearing, the vocational expert (VE) was first provided with the limitations in the state agency assessments (R. at 455-456), which were included in the ALJ's RFC findings (R. at 20). The ALJ then added the additional limitation that plaintiff can stand for up to 30 minutes, and then needs to rest for 30 minutes. That discussion is set forth as follows:

> Q (by ALJ) Okay for my second hypothetical question I want you to assume the same information I gave you for the first hypothetical question. **Assume that the person can stand for a maximum of about 30 minutes at a time, stand and walk. Needs to rest up to 30 minutes before they can stand again so limited to only about four hours total in a day.** That being the only change from the first hypothetical, everything else remaining the same, I assume they still can't do past work and the skills are not transferrable?
>
> A (by VE) Yes sir, that is correct.
>
> Q But how would those limitations further erode the unskilled job base?
>
> A Well let me make sure I'm understanding, Your Honor. Are you saying that after standing that they would then need to rest at least a half hour up, and only work up to four hours a day?

> Q No. **I said they need to rest approximately or up to 30 minutes so about four hours total is how they, how much they can stand and walk in a day.**
>
> A Okay. I'm sorry, I, that's, because this changes my answer. Okay. Your Honor, that's going to result, stand and walk approximately four hours a day, about a 75 percent reduction ln light. Fairly minimal in sedentary and since that standing and walking is usually two hours or less for sedentary anyway but that will result in a significant reduction of jobs at light.

(R. at 457-458, emphasis added). Based on these hypothetical questions, the ALJ then identified both light (sewing machine operator and garment sorter) and sedentary jobs (stuffer, addressor, and toll collector) that plaintiff could perform, which the ALJ adopted in his decision (R. at 458-459, 25).

The court finds that the ALJ adequately included in the hypothetical question to the VE plaintiff's limitation that she cannot stand and/or walk for longer than 30 minutes at a time without having to stop and rest for 30 minutes.  Plaintiff argues that one cannot work for 8 hours if you have to "rest" after 30 minutes of standing and/or walking.  However, it is reasonable to interpret the ALJ's RFC finding that plaintiff "cannot stand and/or walk longer than 30 minutes at a time without having to stop and rest for 30 minutes" (R. at 20) to mean that, after plaintiff has stood or walked for 30 minutes, she must be able to not stand and/or walk for 30 minutes (i.e., sit).  That is clearly the understanding of both the ALJ and the VE, based on

9

their statements, and the court finds that the ALJ fully and accurately set forth his RFC findings to the VE, and made a determination that plaintiff could work based on the testimony of the VE.

Plaintiff argues that "there is no evidence" which shows that plaintiff is able to engage in the level of physical activity set forth in the RFC (Doc. 8 at 6). However, the ALJ based his RFC findings on the state agency physical RFC assessment by at least one, and possibly two physicians,[1] which included a narrative discussion explaining the findings on the assessment (R. at 356, 360, 363). Furthermore, plaintiff fails to cite to any medical evidence in the record that indicates that plaintiff has physical limitations not set forth in the ALJ's RFC findings. Thus, the ALJ made physical RFC findings based on the undisputed medical opinions expressed by Dr. Williamson.

Plaintiff also argues that the ALJ erred by relying on an MRI in 2007, which, according to the ALJ, showed only mild scoliosis of the lumbar spine (R. at 22). Plaintiff contends that no 2007 MRI appears in the record. It appears from the record that on September 27, 2007, an x-ray was performed on the plaintiff which showed "mild scoliosis of the lumbar spine" (R.

---

[1] The court cannot ascertain the name of the person who performed the initial assessment, which was signed on August 29, 2005, but the assessment was reviewed and affirmed by Dr. Williamson on January 5, 2006 (R. at 362).

at 430, 415). An error by the ALJ in referring to the test as an MRI instead of an x-ray is clearly harmless error.

Plaintiff also takes issues with the statement of the ALJ that examinations have not shown positive straight leg raising or reflex, sensory or motor deficits (Doc. 8 at 7). The ALJ did state that examinations have not shown any reflex, sensory, or motor deficits, and then stated that "straight leg raising is negative for radiculopathy" (R. at 21). Plaintiff argues that there are medical records which show a decreased range of motion in the lumbar spine, positive straight leg raising and sciatica (Doc. 8 at 7).

Dr. Henderson, who performed a consultative examination of the plaintiff, found no asymmetrical reflex, sensory or motor deficit (R. at 350). Furthermore, some of the medical records cited to by the plaintiff specifically state that plaintiff has "no apparent motor or sensory deficit" and normal reflexes (R. at 289, 293, 309). Dr. Henderson also found a limited range of motion (R. at 350). The ALJ had previously noted that Dr. Henderson's report stated that plaintiff had a reduced range of motion in the lumbar spine (R. at 17), and the state agency physical RFC assessment, relied on by the ALJ in making his RFC findings, cited to the report by Dr. Henderson that plaintiff had a limited range of motion in the lumbar spine (R. at 356).

While the ALJ must consider all of the evidence, an ALJ is

11

not required to discuss every piece of evidence.  The ALJ must discuss the evidence supporting his decision, the uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  The court finds that the ALJ in this case has complied with the requirements set forth in Clifton in regards to his discussion of the medical evidence.  As previously noted, plaintiff has failed to cite to any medical evidence that plaintiff, due to her impairments, has any physical or mental limitation not included in the ALJ's RFC findings.

Finally, plaintiff argues that the ALJ's RFC findings are contrary to some of plaintiff's allegations regarding her limitations (Doc. 8 at 6).  However, the court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).   Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The ALJ discussed plaintiff's claims of limitations, but found her not entirely credible in light of the medical evidence and her testimony and statements (R. at 21-23). The court finds that the ALJ set forth the specific evidence he relied on in evaluating plaintiff's credibility. As noted above, the court will not reweigh the evidence or substitute its judgment for that

of the Commissioner.  <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir. 2005); <u>White v. Barnhart</u>, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).  After examining the evidence as a whole, including the lack of any medical evidence that plaintiff has limitations not included in the ALJ's RFC findings,[2] the court finds that the ALJ's credibility findings are closely and affirmatively linked to substantial evidence.  The court further finds that the ALJ's RFC findings are also closely and affirmatively linked to substantial evidence.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be affirmed.

---

[2]The ALJ expressly noted that no treating medical source has stated that plaintiff cannot work or recommended specific work limitations not contained in the ALJ's RFC findings (R. at 23). The fact that no physician has opined that plaintiff is disabled while other physicians or psychologists have opined that plaintiff can work is a relevant consideration for the ALJ in finding that plaintiff's claims of disabling pain and limitations are not fully credible.  <u>See</u> <u>Kelley v. Chater</u>, 62 F.3d 335, 338 (10th Cir. 1995)(no physician opined that Mr. Kelley is disabled, and three physicians have opined that he retains the ability to perform at least some sedentary work; the ALJ did not err by discrediting Mr. Kelley's assertion of a 2 hour nap limitation).

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on April 16, 2009.

> s/Donald W. Bostwick
> DONALD W. BOSTWICK
> United States Magistrate Judge